IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CR No.: 3:17-350-JFA |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | AND ORDER |
| REGINALD YVON JONES ) | |
| _____ ) | |

This matter is before the court on the defendant's *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 697). He contends that his immediate release is called for, relying in part on the threat posed by the ongoing COVID-19 pandemic, coupled with his existing medical conditions.

The government has responded in opposition, arguing that the defendant has not shown an extraordinary and compelling reason for release. Additionally, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671

1

(4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals are to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling

3

reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether it will grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

*Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

As it appears to this court that the defendant has fully exhausted his administrative remedies, the court will proceed to review the matter on the merits.

4

DISCUSSION

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his or her medical conditions render them particularly susceptible to severe illness or death should he or she contract the virus. *See United States v. Youngblood*, 858 Fed. Appx. 96, 98 (4th Cir. 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

*The Defendant's Motion for Compassionate Release*

In his motion (ECF No. 697), the defendant states that he suffers from hypertension, Type II diabetes, and hyperlipidemia. These medical issues have been recognized by the CDC as diseases that can increase a person's risk of severe illness from COVID-19. The defendant contends that he also suffers from two additional maladies: tachycardia and

5

bradycardia. However, these afflictions are not listed by the CDC as risk factors which would increase complications from COVID-19.

The government suggests that the defendant's medical issues in prison have been driven in part by his failure to take medication or follow the directives of his medical providers. Defendant relies, in part, upon two hospital visits to establish his medical conditions and their severity. However, as the government points out, the defendant's uncontrolled high blood pressure or hypertension appears to be the result of a high salt diet, coupled with a lack of exercise, as advised by his medical providers. Additionally, the diabetic emergency that rendered the defendant unresponsive was caused by his continued refusal to take his medications and comply with his medical treatment plan.

For purposes of the present motion, the court will assume that the defendant has, in fact, demonstrated an extraordinary and compelling reason, that is, his current medical conditions, for compassionate release.

However, the court's inquiry does not end here. Under Fourth Circuit guidance, this court must now make an individualized assessment of the defendant's case, with specific attention to the factors under 18 U.S.C. § 3553(a), and also with particular review of the defendant's post-sentencing conduct while incarcerated.

Taking the § 3553(a) factors in order, the court finds as follows:

1. *Nature and Circumstances of the Offense*. The defendant was charged with being a member of a wide-ranging conspiracy that distributed both powder and crack cocaine in the Midland's area of South Carolina over a 10-year period. He was ultimately held

6

accountable for possession with intent to distribute and distribution of 1,963.85 kilograms of converted drug weight. When apprehended, he was found in possession of a firearm and received a firearm enhancement at sentencing. Cocaine, and crack cocaine in particular, distribution is a severe and pervasive problem within the District of South Carolina. In fact, South Carolina annually ranks in the top five districts around the Country in terms of crack cocaine prosecutions.

In December 2017, the defendant and four others were named in a multi-count Indictment charging violations of narcotics laws and related offenses. The defendant was named in the following Counts:

| | |
|---|---|
| Count 1: | Conspiracy to possess with intent to distribute and distribute cocaine and cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 841(b)(1)(C); |
| Counts 20, 21, 24: | Use of a telephone to facilitate the commission of a felony under the Controlled Substances Act, in violation of in violation of 21 U.S.C. §§ 841(a)(1) and 846; all in violation of 21 U.S.C. § 843(b). |

The defendant ultimately pleaded guilty pursuant to a written Plea Agreement (ECF No. 454) to the lesser included offense of Count 1 of the Superseding Indictment for conspiracy to possess with intent to distribute a quantity of cocaine and 28 grams or more of cocaine base.

After indictment, the government filed an Information notifying the defendant that he was subject to enhanced penalties based upon previous convictions. Ultimately, however, this enhancement was not applied at his sentencing because both previous drug convictions

were considered part of the relevant conduct for the instant offense. In addition to these previous controlled substance offenses that did not count towards his sentencing, the defendant had one additional conviction for Assault and Battery of a High and Aggravated Nature (ABHAN) and one conviction for marijuana possession. The defendant suggests that the ABHAN conviction has been expunged and the court will accept this statement as true. However, as noted, the defendant received a two-point gun enhancement because he was in possession of a firearm while engaging in drug distribution.

In his reply brief, the defendant contends that he did not receive a sentencing enhancement for the firearm (ECF No. 721 at 2), but this statement by the defendant is in error.  *See* PSR (ECF No. 655) at ¶ 41 (two points added to offense level for possession of a dangerous weapon in connection with the drug offense.)  As to the marijuana possession conviction, this was not a factor in the defendant's sentencing.

The Presentence Report (PSR) (ECF No. 655) prepared by the United States Probation Office determined that the defendant's total offense level was 29 and his criminal history category was I.  This resulted in a Guideline sentencing range of 87 to 108 months imprisonment.

At sentencing, this court denied the government's motion for an upward departure and imposed a sentence of 98 months incarceration and 4 years of supervised release.

The defendant did not appeal his conviction or sentence.  He is currently scheduled for release from the BOP in April 2024.

2. *History and Characteristics of the Defendant*.  The defendant is 55 years old and has three adult children. He has been involved in a long-term relationship with a female companion.  His PSR reveals the Type II diabetes and hypertension referred to above.  The defendant has a high school education and worked at a construction company for approximately 5 years.

*Post-Sentencing Conduct*

The defendant has no disciplinary infractions on his record while incarcerated.  He has participated in the following vocational and educational courses: Physical Science, Personal Finance, Soft Skills, and Life Science.

3. *Seriousness of the Crimes*.  As noted herein, the court regards the defendant's crimes as very serious and are fully supportive of a significant sentence.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*.  The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*.  The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant*.  The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant.  The court views this as an important factor to be addressed and is perhaps one of the most important factors counseling against the defendant's immediate

9

release.

      7.  *Need to Avoid Unwarranted Disparity*.  This court has carefully considered the sentences imposed on the co-defendants in this case and finds no disparity in these sentences imposed at the times of conviction.

*Additional Arguments Advanced by the Defendant*

In his reply brief, the defendant raises several additional factors that must be addressed by the court.  First, the defendant points out that he was not in a leadership role in the conspiracy and that he is a 55-year-old man with no violent history.  Both of these factors were taken into account in calculating the defendant's sentencing Guidelines that resulted in his original sentence.  He was not assigned an enhancement for a leadership role, and his criminal history was I.  Accordingly, this is no basis for granting the defendant's motion for release.

The defendant takes issue with the government's argument that some of his medical emergencies were due to his own conduct in failing to take medications or follow medical advice.  The defendant's behavior in this regard is adequately reflected in the medical records from the Bureau of Prisons.

Finally, the defendant contends that he was given a "minimum" security classification and that he does not pose a threat to society.  He states that he is now being considered for out-custody at a federal camp facility.  This court is fully aware of all of these arguments advanced by the defendant, but is not persuaded that these are a sufficient justification for immediate release.  Even though the defendant was not a leader in the conspiracy, and he had

a low criminal history category with no history of violent felonies, the fact remains that the defendant's crime was most serious, fully supportive of the sentence imposed in this case.

## CONCLUSION

For the foregoing reasons, the court determines that, even assuming the defendant has demonstrated an extraordinary and compelling reason for his release due to his medical conditions, his release at this time is not appropriate in light of this court's individualized assessment of the § 3553(a) factors, including the defendant's post-sentencing conduct. The defendant's motion for compassionate release is respectfully denied.[1] (ECF No. 697).

IT IS SO ORDERED.

January 18, 2022                                       Joseph F. Anderson, Jr.
Columbia, South Carolina                          United States District Judge

---

[1] To the extent that the defendant seeks to have this court direct the BOP to place the defendant in home confinement, this court is without authority to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General. See 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. See CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")